Bank of CHESTER v. RALSTON.

A debt due to an administrator, who is himself sole distributee, is not subject to attachment for his private debt, until settlement of his administration account.

An attachment in execution may issue on a judgment recovered prior to the act of 1836, giving this remedy.

A sci. fa. is not required to entitle plaintiff, in a judgment entered by warrant of attorney, to have execution.

IN error from the Common Pleas of Chester.

April 6, 7.  A judgment was confessed by Henry Olwine in 1832.  In 1845, an attachment execution issued thereon, which was levied on a debt due to him by Ralston, executor and trustee, but no return or appearance as to the original defendant.

On the trial of the sci. fa. it appeared that one Evans hi queathed a sum of money to the children of Henry Olwine, ston having been appointed executor and trustee.  The administr and trustee accounts of Ralston were shown, exhibiting a bal due these children.  It was proved they were dead before the issued, some being minors and some of full age, without issue;  H. Olwine, their father, being their administrator.  It was also in evidence that debts due by these children still remained unpaid.

The plaintiff requested instructions that the fund was attachable, subject to such debts as were shown by the trustee's accounts to have been paid for the children, and such other sums as had been paid to H. Olwine, prior to the service of the writ.

The court directed a verdict for defendant.

*Darlington* and *Meredith*, for plaintiff in error.—There are two points relied on first to be disposed of; the right to an execution on a judgment prior to the act of 1836, and the necessity of a *sci. fa.* after five years elapsed.   The latter is settled by Heebner *v.* Chave, 5 Barr, 115; Dailey *v.* Straus, 2 Barr, 401; 7 Watts & Serg. 444; Skidmore *v.* Bradford, 4 Barr, 296; Riley *v.* Hirst, 2 Barr, 346; Gemmill *v.* Butler, 4 Barr, 232. The first point rests upon a case in 2 Miles, 421; and that proceeds on the words of the act, "where judgment shall have been obtained." Even on strict grammatical construction, these words include all judgments prior to the issuing of the execution.   But such nice distinctions are not presumed without a reason.   The act is a general one, taking the place of all prior remedies, as will be seen by comparing the 21st, 22d and 27th sections.   Take the case of life-estates; they would be exempted entirely.   But the necessity for the construction we contend for is palpable, on looking at the act of 1842.   There never was a time when this kind of property was exempted.   Before 1836, arrest, which compelled an assignment, was the only process to reach it.   Then this additional remedy was given, and by the act of 1842, it is now the only one.   It has been, however, decided, though the attention of the court was not called to the point, in Layman *v.* Beam, 6 Whart. 181; Skidmore *v.* Bradford, 4 Barr, 296.

The last point is the liability of the fund in any event.   It will be observed the administrator is himself the distributee, and if we must wait till he settles the estate, the fund is lost.   No doubt he is entitled to it to pay debts, and for the surplus only do we ask judgment, and that there will be a surplus is not denied; Ross *v.* Cowden, 7 Watts & Serg. 376, decides this point directly.

*Gerhard* and *Lewis*, contrà.—It has never been decided that an execution can issue without a *sci. fa.* on a judgment confessed. There may be exceptions, it is true, as where the defendant appears and defends; but here the real debt was unascertained, and no service on the defendant.   The case in 2 Miles is in accordance with the very words of the act, which expressly refer to future judgments.   But how is this proposed judgment to be entered?   It

must be for a sum certain, and that the court has not jurisdiction to determine. The creditors of the children are not parties, and have no notice, nor could they be heard. That is exclusively in the Orphans' Court. It would lead to inextricable confusion, to authorize this extension of a new remedy.

*April* 17. COULTER, J.—In the case of Skidmore *v.* Bradford, 4 Barr, the Chief Justice said that the 8 & 9 Will. 3 did not extend to judgments confessed on bonds with warrant, and a case was ruled on the same principle, at the last term at Pittsburgh, which is not yet reported. The words of the statute do not include such judgments, and the reason for its enactment, or an inducement for its adoption in that respect, never existed in this state.

At the time of the passage of the statute, a defendant, in a penal judgment, could obtain relief only by filing his bill in the Court of Chancery, which occasioned expense, trouble, and delay ; and hence the statute was enacted to compel the plaintiff to show, in the common-law court, the amount of debt and damages really due. No hardship or injustice can result to defendants by occasion of the law being so held, because relief is always at hand, upon application to the discretionary and equitable powers of the common-law court where the judgment exists, who always have exercised, upon motion, sufficient control over their own process to prevent injustice, and give adequate relief to defendants in judgments of this nature.

The act of Assembly, which affords the remedy of attachment in execution, is not retrospective or retroactive, in any objectionable or illegitimate aspect. The defendant being bound to pay the judgment, both legally and morally, which was obtained before the passage of the act, his estate was of course amenable, unless where it had been excepted by previous statutes. The law brought within the range of the process nothing which had been exempted, and touched no ground interdicted by any constitutional implication. The law relates to executions issued after the passage of the act, and as it has been generally construed throughout the state, they could issue on judgments obtained a month before its passage, as well as on judgments obtained a month after.

The point most strongly mooted by the counsel for the plaintiff was, that the claim or interest of a distributee, where there are several in that relation, is the subject of an attachment in execution, before settlement in the Orphans' Court, by the administrator

of the intestate. In this, however, the judgment of this court is against him; the evils resulting from a contrary decision would be grievous and flagrant. The interests of a distributee might be totally sacrificed, and the duties and responsibilities of executors and administrators be greatly embarrassed. The judgment on an attachment execution is, that the debt attached in the hands of the garnishee shall be sold, or so much thereof as will satisfy the debt, interest, and costs of the plaintiff. The interest of the distributee is only in the surplus which remains after satisfying the debts of the deceased; but how can an approach be made towards an ascertainment of that balance until the administrator has settled an account. No purchaser would be found for an interest so uncertain and impalpable. The object of the law is not to lead or tempt persons into difficulties, but on the contrary, to save them, so far as may be. It would be at best but a sort of lottery, or gambling transaction. The law, if so construed, would deal somewhat cruelly with distributees.

The act of 16th June, 1836, authorizing the attachment in execution, speaks of a " debt due to the defendant;" now this cannot be predicated of a distributee's claim, before settlement of administrator's account, for it is only after that the decree of distribution is made. But if the law allowed this undefined and unknown interest to be attached, it would necessarily withdraw, to a certain extent, the accounts of administrators from the Orphans' Court, and subject the administrator to two jurisdictions, from which it was an especial object of the act of 1834 to free him, as may readily be perceived by the 33d, 35th, 36th, 37th and 39th sections of that act. The counsel for plaintiff in error relied upon Ross v. Cowden, 7 Watts & Serg., as ruling the case in their favour. I apprehend, however, that the case does not bear them out, but leans decidedly the other way.

The court say, and the case shows, that the executor was the sole residuary legatee of an estate far beyond the payment of all legacies and debts, and Ross being a debtor to the estate, the executor and residuary legatee took a note in his own name, and in fact made it a debt due to himself individually. Seven years after testator's death, when the residuary legatee had squandered the estate, this debt was attached in Ross's hands. The court say, " under all the circumstances of the case, the debt attached may well be considered as a debt owing to the defendant in his own right, and liable to be attached as a debt due to him."

It was clearly considered by the court as a liquidated debt due

2 s 2

to the executor, in a sum certain, and therefore liable to be attached on a judgment against him, and does not cover or reach the case before the court.

Judgment affirmed.